IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MONUMENT PEAK VENTURES, LLC, | § | |
| **Plaintiff,** | § | |
| | § | **CIV. A. NO. 2:23-cv-127** |
| v. | § | |
| | § | |
| KYOCERA CORPORATION, | § | **JURY TRIAL** |
| **Defendant.** | § | |
| | § | |

## COMPLAINT AND JURY DEMAND

Plaintiff Monument Peak Ventures, LLC ("MPV") alleges for its Complaint

for patent infringement against Kyocera Corporation ("Kyocera") the following:

### THE PARTIES

1.      Plaintiff, Monument Peak Ventures, LLC, is a Texas Limited Liability

Company with its principal place of business in Allen, Texas.

2.      On information and belief, Defendant Kyocera Corporation ("Kyocera

Corp.") is a corporation organized and operating under the laws of the country of

Japan with its principal place of business at 6 Takeda Tobadono-cho, Fushimi-ku,

Kyoto 612-8501 Japan. Kyocera Corp. manufactures, imports into the United

States, sells and/or offers for sale in the United States mobile telephones and

printers. In addition, Kyocera Corp.'s mobile telephones and printers are marketed,

offered for sale, and/or sold throughout the United States, including within this

District. Kyocera Corp. can be served with process by serving the Texas Secretary of State.

3.      Defendant Kyocera has prior knowledge and notice of MPV's patents by virtue of a patent license that includes them.  Kyocera's license expired in 2019.

## JURISDICTION AND VENUE

4.      MPV brings this action for patent infringement under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c) and 1400(b).  Kyocera does business in this judicial district, has committed acts of infringement in this judicial district and has purposely sought and transacted business in this judicial district involving the accused products.

6.      Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long-Arm Statute, due at least to its substantial business in this State and judicial district, including: (a) at least part of its infringing activities alleged herein; and (b) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from goods sold and services provided to Texas residents including in this district.

**MONUMENT PEAK**

7.        MPV owns a portfolio of patents invented by the Eastman Kodak Company.  Since acquiring the Kodak portfolio, MPV has promoted adoption of technologies claimed in Kodak portfolio and has entered into license agreements with over thirty companies.

8.        MPV asserts that Kyocera infringes, directly and indirectly, U.S. Patent Nos. 6,862,039 (the "'039 Patent"), 7,006,890 (the "'890 Patent"), 7,092,573 (the "'573 Patent"), 7,187,858 (the "'858 Patent"), and 7,212,668 (the "'668 Patent"), (collectively, the "MPV Asserted Patents").

**KYOCERA CORPORATION**

9.        The Accused Kyocera Smartphones include Kyocera DuraForce Smartphones (including Ultra 5G series and Pro 2 series), DuraSport Smartphones, and DuraSlate Wi-Fi Tablet.

10.        The Accused Kyocera Printers include Kyocera multifunctional printers (Kyocera MFPs), including Kyocera ECOSYS printers, including models M2040dn, M2135dn, MF2540dn, M2635dn, M2640idw, M2735dw, M3145dn, M3145idn, M3645dn, M3645idn, M3655idn, M3860idn, 3860idnf, M4125idn, M4132idn, M5526cdn, M5526cdw, M6230cidn, M6235cidn, M6630cidn, M8124cidn, M8130cidn, MA2100cfx, MA2100cwfx, MA4500fx, MA4500ifx, MA4500ix, MA4500x, MA5500ifx, and MA600ifx and Kyocera Cluster Printing Pro software.

## COUNT 1

## (INFRINGEMENT OF U.S. PATENT NO. 6,862,039)

11.     MPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

12.     MPV is the owner, by assignment, of U.S. Patent No. 6,862,039.

13.     As the owner of the '039 Patent, MPV holds all substantial rights in and under the '039 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

14.     The '039 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

15.     MPV alleges that Kyocera has infringed, and continues to infringe, the '039 Patent.

16.     The '039 Patent was issued by the United States Patent and Trademark Office on March 5, 2005, and is titled "Electronic Camera Including Color Tone Adjustment of a Real-Time Image."

17.     The '039 Patent is valid and enforceable.

18.     Kyocera has directly infringed at least claim 1 of the '039 Patent by using (including its own testing), making, selling, offering for sale, licensing, and/or import in the United States without authority Accused Kyocera Smartphones.

19.      Each of the Accused Kyocera Smartphones satisfies each and every element of each asserted claim of the '039 Patent either literally or under the doctrine of equivalents.

20.      Claim 1 of the '039 Patent recites an embodiment of the claimed subject matter:

1.   An electronic camera which is portable and has a display device for showing a photoelectric-converted image, said camera comprising:

   a)  input means for entering a color tone adjustment value of a real-time image shown on the display device;

   b)  adjustment means for adjusting the color tone of the real-time image according to the entered adjustment value; and

   c)  correction means for correcting the real-time image according to the adjusted color tone.

21.      Each of Kyocera Accused Smartphones is a portable electronic device that includes a camera.  For example, the Kyocera DuraForce Ultra 5G smartphone includes a camera phone that displays digital images.  The digital images are created by converting light into electric signals, which may be processed and stored as digital images.



Screenshot taken from DuraForce Ultra 5G camera app.

22.     The Accused Kyocera Smartphones (i.e., "electronic camera") (e.g.,

Kyocera DuraForce Ultra 5G) are portable display devices capable of displaying a

digital image (i.e., "photoelectric-converted image").

23.     The Accused Kyocera Smartphones include an app includes a white balance (WB) slider to allow a user to input a white balance value of a real-time image shown on the display.  The WB slider is an example "input means" and the white balance value is an example "color tone adjustment value."  As shown below, the WB slider modifies the white balance of the image.

24.     The Accused Kyocera Smartphone's WB slider (i.e., "input means") allows the user to input a white balance value (i.e., "color tone adjustment value") of a real-time image shown on the display. Kyocera smartphones include hardware/circuitry (i.e., "adjustment means") which adjusts the white balance value of the real-time image according to the entered adjustment value.



Screenshot from Kyocera DualForce Ultra 5G camera application.

25.      Kyocera smartphones include hardware and circuitry, which is an example of correction means that adjust the white balance of the real-time image according to the entered adjustment value from the WB slider.

26.      Kyocera smartphones contain hardware/circuitry (i.e., "correction

means") to correct the real-time image according to the adjusted white balance.



Screenshots taken from Kyocera
DuraForce Ultra 5G camera app

27.    Kyocera's activities were without authority of license under the '039 Patent.

28.    Kyocera's acts of infringement have caused and continue to cause damage to MPV for which MPV is entitled to recover damages sustained as a result of Kyocera's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT 2
## (INFRINGEMENT OF U.S. PATENT NO. 7,006,890)

29.     MPV realleges and incorporates by reference the allegations set forth above, as if set forth verbatim herein.

30.     MPV is the owner, by assignment, of U.S. Patent No. 7,006,890.

31.     As the owner of the '890 Patent, MPV holds all substantial rights in and under the '890 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

32.     The '890 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code after a full and fair examination.

33.     The '890 Patent was issued by the United States Patent and Trademark Office on February 28, 2006, and is titled "System and Method for Managing Work Load Distribution Among a Plurality of Image Output Devices."

34.     The '890 Patent is valid and enforceable.

35.     Kyocera has infringed, and is continuing to infringe, at least claim 9 of the '890 Patent by using (including its own testing), making, selling, offering for sale, licensing, and/or import in the United States the Accused Kyocera Cluster Printing Pro software and inducing others to use the Accused Kyocera Cluster Printing Pro software in a way that infringes the '890 Patent.

36.     Claim 9 recites an embodiment of the claimed subject matter:

9.      A computer software program for use in a computer for controlling operation of a photofinishing lab having a plurality of output devices for producing a plurality of different output products for a plurality of different job orders and a controller for distributing job orders to said plurality of devices, each of said output devices capable of outputting one or more of said plurality of different output products, said software program when loaded on said computer will cause said computer to perform the steps of:

a)   monitor operations of said plurality of different output devices by said controller with respect to said job orders in queue;

b)   display the operational status of each of said plurality of said output devices on a display device in a predetermined format, said predetermined format including information relating to the current configuration status of said plurality of different output devices, the current backlog of said job orders in queue for each of said plurality of different output products; and

c)   said controller producing a visual indication when said operational efficiency reached a predetermined criterion and automatically adjusting the operational status of at least one of said plurality of output devices response to said monitoring.

37.     Kyocera Printing Pro is a computer software program that when executed causes a computer to control the operation of up to four Kyocera printers.



Many businesses have occasional or seasonal needs for large print jobs that exceed the efficiencies of their existing MFPs or printers. Kyocera Cluster Printing Pro is a sound, alternative solution to overtaxing your existing equipment, or having to periodically outsource, incurring more costs. Kyocera brings this capability to customers through its Kyocera Cluster Printing Pro software solution.

Simple, cost effective, and highly efficient, Kyocera Cluster Printing Pro enables you to maximize your existing Kyocera office equipment by splitting jobs across up to four devices based on their availability, features, or speed. You can split the printing of multiple copies of a single job, or divide a large job across your devices. If an error occurs, the job will automatically be redirected to other pre-set devices, ensuring very little down time. This solution cuts printing time in half, making missed deadlines a thing of the past.

USE THE COPY SPLITTING FEATURE TO PRINT MULTIPLE COPIES OF A SINGLE JOB, OR THE PAGE SPLITTING FEATURE TO DIVIDE A SINGLE JOB - ACROSS UP TO FOUR DEVICES.

**BENEFITS OF KYOCERA CLUSTER PRINTING PRO**
› Automated device discovery
› Display of device properties and status
› Faster printing, less wait time
› Split jobs to maximize each Kyocera MFPs/printer's capabilities across up to 4 devices
› Print multiple copies of a single job across 4 Kyocera MFPs/printers
› Add cover page to each copy or split job
› Error handling through automatic redirection of jobs to other available devices
› Easy setup similar to a regular printer driver

**Operating Systems Supported**
Windows 7, Windows 8, Windows 8.1, Windows 10, Windows 10 Anniversary Update

Note: Cluster Printing Pro does not support client-server environment.

Kyocera Cluster Split Jobs for Faster Printing (Exh. __).



38.        Kyocera Cluster Printing Pro software sends job orders to the

connected device and monitors the job orders in the queue:

**Printing Status Window**

When the user sends a print job, the Cluster Printing Status Window box will appear. Before a print job is sent and until the print job finishes, the port monitor checks each printer device for an error.

Kyocera Cluster Printing v1.1 Software Information at p. 13.



KCP – Printing Status Window

*Id.*

39.     As shown in the Figure above, the Cluster Printing Status Window displays the operational status of the output devices in a predetermined format, which includes information relating to the current configuration status of the output devices, and displays the current backlog of job orders in queue.  This information includes "Job status," "Progress," and "Device."

40.     Cluster Printing Pro determines when a device is out of paper (*e.g.*, "cassette 1 is out of paper"), jammed, or encounters some other error (*e.g.,* "cover is open"), which impacts the operational efficiency of that device. The Cluster Printing Status Window displays a visual indication that the operational efficiency of the device reached a predetermined criterion and automatically adjusts the operational status of the device.

**BENEFITS OF KYOCERA CLUSTER PRINTING PRO**
> Automated device discovery
>. Display of device properties and status
> Faster printing, less wait time
> Split jobs to maximize each Kyocera MFPs/printer's capabilities across up to 4 devices
> Print multiple copies of a single job across 4 Kyocera MFPs/printers
> Add cover page to each copy or split job
> Error handling through automatic redirection of jobs to other available devices
> Easy setup similar to a regular printer driver

Kyocera Cluster Printing Pro:  Splitting Jobs for Faster Printing.



41.    The operation of the Accused Kyocera Cluster Pro Software performs the steps recited in claim 9 of the '890 Patent, and satisfies each and every element of each asserted claim of the '890 Patent either literally or under the doctrine of equivalents.

42.    Kyocera describes its Cluster Printing Pro Software at

https://www.kyoceradocumentsolutions.eu/en/support/downloads.name-L2V1L2VuL3NvZnR3YXJlL0tZT0NFUkFfFQ0xVU1RFUl9QUklOVElORw==.html#tab=document.

43.    Kyocera's users, customers, agents and/or other third parties (collectively, "third-party infringers") infringed and continue to infringe, including under 35 U.S.C. § 271(a), at least claim 9 of the '890 Patent by using the accused Kyocera products.

44.    Kyocera has, since at least no later than November 6, 2020, known or been willfully blind to the fact that third-party infringers' use of the accused

Kyocera products directly infringed the '890 Patent.

45.     Kyocera's knowledge of the '890 Patent, which covered operating the accused Kyocera products in their intended manner such that all limitations of at least claim 9 of the '890 Patent were met, made it known to Kyocera that the third-party infringers' acts directly infringed the '890 Patent, or, at the very least, rendered Kyocera willfully blind to such infringement.

46.     Having known or been willfully blind to the fact that the third-party infringers' use of the Accused Infringing Devices in their intended manner such that all limitations of at least claim 9 of the '890 Patent were met directly infringed the '890 Patent, Kyocera actively encouraged the third-party infringers to directly infringe the '890 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the accused Kyocera products, and by, for example: marketing them to the third-party infringers; supporting and managing the third-party infringers' use; and providing technical assistance to the third-party infringers during their continued use of the accused Kyocera products by, for example, publishing instructional information directing third-party infringers how to make and use the infringing products to infringe at least claim 9 of the '890 Patent.

47.     Kyocera induced the third-party infringers to infringe at least claim 9 of the '890 Patent by directing or encouraging them to operate the infringing

products that satisfy all limitations of the asserted claims of the '890 Patent.

48.    For example, Kyocera advertised and promoted the features of the

infringing products and encouraged the third-party infringers to operate them in an

infringing manner. Kyocera further provided technical assistance as to how the

infringing products should be used by the third-party infringers by, for example,

publishing instructional information directing third-party infringers how to make

and use the accused Kyocera products to infringe claim 9 of the '890 Patent:

49.    In response, the third-party infringers acquired and operated the

accused Kyocera products such that all limitations of the asserted claims of '890

Patent were practiced.

50.    Kyocera specifically intended to induce, and did induce, the third-

party infringers to infringe at least claim 9 of the '890 Patent, and Kyocera knew of

or was willfully blind to such infringement. Kyocera advised, encouraged, and/or

aided the third-party infringers to engage in direct infringement, including through

its encouragement, advice, and assistance to the third-party infringers to use the

infringing Kyocera products.

51.    Based upon, among other things, the foregoing facts, Kyocera has

induced infringement and continues to induce infringement under 35 U.S.C. §

271(b) of at least claim 9 of the '890 Patent.

52.    Upon information and belief, Kyocera knew that the accused Kyocera

products are made and operate in a manner that satisfies all limitations of at least claim 9 of the '890 Patent.

53.     Kyocera's acts of infringement of the '890 Patent were willful and intentional under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).  Since at least November 6, 2020, Kyocera willfully infringed the '890 Patent by refusing to take a license.  Instead of taking a license to the '890 Patent, Kyocera made the business decision to "efficiently infringe" the '890 Patent. In doing so, Kyocera willfully infringed the '890 Patent.

54.     Kyocera's acts of direct and indirect infringement caused damage to MPV and MPV is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT 3
## (INFRINGEMENT OF U.S. PATENT NO. 7,092,573)

55.     MPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

56.     MPV is the owner, by assignment, of U.S. Patent No. 7,092,573.

57.     As the owner of the '573 Patent, MPV holds all substantial rights in and under the '573 Patent, including the right to grant licenses, exclude others, and

to enforce, sue, and recover damages for past and future infringement.

58.    The '573 Patent was issued by the United States Patent Office on August 15, 2006, and is titled, "Method and System for Selectively Applying Enhancement to an Image."

59.    The '573 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code after a full and fair examination.

60.    Kyocera has been and continues to practice without authorization or license one or more claims of the '573 Patent including claim 9.

61.    Kyocera is practicing the asserted claims of the '573 Patent by making, using, offering for sale, selling, and/or importing Kyocera Multifunctional Printers (Kyocera MFPs), Kyocera Smartphones, and associated software.

62.    Example Kyocera MFPs include Kyocera ECOSYS printers, including models M2040dn, M2135dn, MF2540dn, M2635dn, M2640idw, M2735dw, M3145dn, M3145idn, M3645dn, M3645idn, M3655idn, M3860idn, 3860idnf, M4125idn, M4132idn, M5526cdn, M5526cdw, M6230cidn, M6235cidn, M6630cidn, M8124cidn, M8130cidn, MA2100cfx, MA2100cwfx, MA4500fx, MA4500ifx, MA4500ix, MA4500x, MA5500ifx, and MA600ifx and Kyocera Cluster Printing Pro software.

63.    Exemplary claim 9 of the '573 Patent recites an embodiment of the

claimed subject matter:

9. A method for processing a digital image, comprising the steps of:

    a) applying a subject matter detector to the digital image to produce a belief map of values indicating the degree of belief that pixels in the digital image belong to target subject matter;

    b) determining the location and size of each of a plurality of belief regions in said belief map;

    c) enhancing the digital image, said enhancing varying pixel by pixel in accordance with the degree of belief the size and the location of the respective said belief region.

64.      For example, Kyocera sells phones (e.g., DuraForce Ultra 5G) that perform a method for processing a digital image:



https://kyoceramobile.com/duraforce-ultra-5g/



Screenshot from Kyocera DuraForce Ultra 5G

65.      Kyocera cameras apply a portrait mode subject matter belief detector

to the digital image to identify the pixels containing target subject matter such as a face or foreground. The process of identifying target subject matter includes identifying pixels that likely to belong to the subject matter, resulting in a map of belief values.


Pictures taken using Kyocera's portrait mode.


66.      Kyocera cameras determine the sizes of each belief region and enhance the image pixel by pixel in accordance with the identification of target subject matter (*i.e.*, threshold degree of belief) and the size of the respective belief region. For example, Kyocera's portrait mode blurs pixels outside the face.

67.      Kyocera's Accused Smartphones provide the hardware and software functionality to perform each and every step of claim 8 of the '573 patent.

68.      Kyocera MFPs employ a method for processing a digital scanned image to darken or lighten the background of scanned documents.

| Adjust the image quality precisely | | | | |
|---|---|---|---|---|
| Emphasize or blur the image outline.<br><br>Example: Emphasize the image outlines | | | Sharpness | page 6-39 |
| Adjust the difference between dark and light parts of the image. | | | Contrast | page 6-41 |
| Darken or lighten the background (the area with no texts or images) of a document.<br><br>Example: Lightening the background | | | Background Density | page 6-39 |
| Prevent bleed-through in 2-sided originals. | | | Prevent Bleed-through | page 6-40 |

https://dam.kyoceradocumentsolutions.com/content/dam/gdam_dc/dc_global/document/manual/product_028/508ci_ENUS.pdf

69.     Kyocera applies optical character recognition to produce a belief map of values indicating the degree of belief that pixels in the scanned image contain text or graphics (*i.e.* "the target subject matter"). The MFPs segment the scanned image into belief regions based on the belief values indicating that the regions contain text or images.

| Item | Description |
|---|---|
| OCR Text Recognition[2] | Set the default OCR Text Recognition.<br>**Value**: Off, On |
| Primary OCR Language[2] | Set the default language of the text to be extracted. ([**English**] is selected as a default.)<br>Select the language to extract from the options displayed on the touch panel. |
| OCR Output Format[2] | Set the default OCR output format.<br>**Value**: Text + Graphics, Text + Graphics with Scanned Image, Scanned Image with Searchable Text |

https://dam.kyoceradocumentsolutions.com/content/dam/gdam_dc/dc_global/docu

ment/manual/product_028/508ci_ENUS.pdf.

70.    Kyocera's MFPs also determine the location and size of each of the belief regions to determine where to apply background density adjustment:



https://dam.kyoceradocumentsolutions.com/content/dam/gdam_dc/dc_global/document/manual/product_028/508ci_ENUS.pdf;lkjadsf.

71.    Kyocera enhances the scanned image by adjusting the density of pixels in accordance with the degree of belief, the size, and the location of the respective belief region.



https://dam.kyoceradocumentsolutions.com/content/dam/gdam_dc/dc_global/document/manual/product_028/508ci_ENUS.pdf.

72.     Kyocera's users, customers, agents and/or other third parties (collectively, "third-party infringers") infringed and continue to infringe, including under 35 U.S.C. § 271(a), at least claim 9 of the '573 Patent by using the accused Kyocera products and software.

73.     Kyocera has, since at least the filing of this complaint, known or been willfully blind to the fact that third-party infringers' use of the accused Kyocera products and software directly infringe the '573 Patent.

74.     Kyocera has knowledge of the '573 Patent, which covers operating the accused Kyocera products and software in their intended manner such that all limitations of the asserted '573 Patent claims are met, and knowledge about how the accused products and software are used by the third-party infringers to practice the '573 Patent.

75.     Kyocera's users, customers, agents and/or other third parties (collectively, "third-party infringers") infringed and continue to infringe, including under 35 U.S.C. § 271(a), at least claim 9 of the '573 Patent by using the accused Kyocera products.

76.     Kyocera has, since at least no later than May 27, 2021, known or been willfully blind to the fact that third-party infringers' use of the accused Kyocera products directly infringed the '573 Patent.

77.     Kyocera's knowledge of the '573 Patent, which covered operating the

accused Kyocera products in their intended manner such that all limitations of at least claim 9 of the '573 Patent were met, made it known to Kyocera that the third-party infringers' acts directly infringed the '573 Patent, or, at the very least, rendered Kyocera willfully blind to such infringement.

78.     Having known or been willfully blind to the fact that the third-party infringers' use of the Accused Infringing Devices in their intended manner such that all limitations of at least claim 9 of the '573 Patent were met directly infringed the '573 Patent, Kyocera actively encouraged the third-party infringers to directly infringe the '573 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the accused Kyocera products, and by, for example: marketing them to the third-party infringers; supporting and managing the third-party infringers' use; and providing technical assistance to the third-party infringers during their continued use of the accused Kyocera products by, for example, publishing instructional information directing third-party infringers how to make and use the infringing products to infringe claim 9 of the '573 Patent:

79.     Kyocera has induced and continues to induce the third-party infringers to infringe at least claim 9 of the '573 Patent by directing or encouraging them to operate the infringing products that satisfy all limitations of the asserted claims of the '573 Patent.

80.     For example, Kyocera advertised and promoted the features of the

infringing products and encouraged the third-party infringers to operate them in an infringing manner. Kyocera further provided technical assistance as to how the infringing products should be used by the third-party infringers by, for example, publishing instructional information directing third-party infringers how to make and use the accused Kyocera products to infringe claim 9 of the '573 Patent:

81.    In response, the third-party infringers acquired and operated the accused Kyocera products such that all limitations of the asserted claims of '573 Patent were practiced.

82.    Kyocera specifically intended to induce, did induce, and continues to induce, the third-party infringers to infringe at least claim 9 of the '573 Patent, and Kyocera knew of or was willfully blind to such infringement. Kyocera advised, encouraged, and/or aided the third-party infringers to engage in direct infringement, including through its encouragement, advice, and assistance to the third-party infringers to use the infringing Kyocera products.

83.    Based upon, among other things, the foregoing facts, Kyocera induced infringement under 35 U.S.C. § 271(b) of at least claim 9 of the '573 Patent.

84.    Upon information and belief, Kyocera knew that the accused Kyocera products are made and operate in a manner that satisfies all limitations of at least claim 9 of the '573 Patent.

85.    Kyocera's acts of infringement of the '573 Patent were willful and

intentional under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016). Since at least May 27, 2021, Kyocera willfully infringed the '573 Patent by refusing to take a license. Instead of taking a license to the '573 Patent, Kyocera made the business decision to "efficiently infringe" the '573 Patent. In doing so, Kyocera willfully infringed the '573 Patent.

86.     Kyocera's acts of direct and indirect infringement caused damage to MPV and MPV is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

**COUNT 4**
**(INFRINGEMENT OF U.S. PATENT NO. 7,187,858)**

87.     MPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

88.     MPV is the owner, by assignment, of U.S. Patent No. 7,187,858.

89.     As the owner of the '858 Patent, MPV holds all substantial rights in and under the '858 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

90.     The '858 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code.

91.     MPV alleges that Kyocera has infringed, and continues to infringe, the

'858 Patent.

92.      The '858 Patent was issued by the United States Patent and

Trademark Office on March 6, 2007, and is titled "Camera and Method for

Operating a Camera Based Upon Available Power in a Supply."

93.      The '858 Patent is valid and enforceable.

94.      Kyocera has directly infringed, and continues to infringe, at least

claim 7 of the '858 Patent by making, using, selling, and/or importing Accused

Kyocera Smartphones, including DuraForce Pro 2 Smartphone. (collectively the

"Accused Infringing Devices" or "Accused Infringing Products") in an exemplary

manner as described below.

95.      The Accused Kyocera Smartphones satisfy each and every element of

each asserted claim of the '858 Patent either literally or under the doctrine of

equivalents.

96.      Claim 7 of the '858 Patent recites an embodiment of the claimed

subject matter:

> 7. A camera for use with a power supply, the camera comprising:
>
>   a) a voltage detecting circuit adapted to detect a voltage level at
>      the power supply and to generate a voltage level signal;
>
>   b) an image capture system for performing a set of power-
>      consuming image capture operations; and
>
>   c) a controller that prevents the image capture system from
>      performing all of the operations in the set of image capture
>      operations when the voltage level signal indicates there is

power available in the power supply to perform only some of the operations in the set of image capture operations.

97.    The Kyocera DuraForce PRO 2 includes a camera with a battery power supply.

 

https://kyoceramobile.com/wp-content/uploads/2021/10/DuraForce-PRO-2-Product-Sheet.pdf.

98.    The Kyocera DuraForce PRO 2 includes a battery charge level circuit (i.e., "voltage detecting circuit") to detect the remaining charge at the battery and to generate a battery percentage (i.e., "voltage level signal").

*Battery*

Monitor your phone's battery usage through this settings menu. View which functions are consuming your battery's charge and at what percentage.

► From the Home screen, tap **Apps** ⊞ > **Settings** > **Battery**.

  ▪ Tap the large battery picture to see the history details of the battery usage.

  ▪ **Last full charge** shows how long ago the battery was fully charged.

  ▪ **Screen usage since full charge** shows how long the screen has been using the battery since full charge of the battery.

  ▪ Tap **Eco Mode** to access the Eco Mode app screen. See Eco Mode.

  ▪ **Show battery percentage** to display the remaining battery level in percentage next to the battery icon on the status bar. Turn on or off by tapping **Show battery percentage** or the **ON/OFF** icon.

99.     The Kyocera DuraForce PRO 2 performs a set of power-consuming image capture operations which include associating a speed, distance, and a route with captured images in Action Overlay mode.



100.    The Kyocera DuraForce PRO 2 includes a processor (i.e., "controller") that automatically turns on Eco Mode when the battery level is less than a set amount. Eco Mode disables certain functions, including location access. When location access is disabled, the power-consuming image capture operations of overlaying speedometer, distance, and route in Action Overlay mode cannot be performed. The power-consuming image capture operations are therefore prevented by the controller.



101.    Kyocera thus infringed at least claim 7 of the '858 Patent by using (including its own testing) in the United States.

102.    Kyocera's activities were without authority of license under the '858 Patent.

103.    Kyocera has had notice of the '858 Patent since at least May 6, 2021.

104.    Kyocera's acts of direct and indirect infringement caused damage to MPV and MPV is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## COUNT 5
## (INFRINGEMENT OF U.S. PATENT NO. 7,212,668)

105.      MPV realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

106.      MPV is the owner, by assignment, of U.S. Patent No. 7,212,668.

107.      As the owner of the '668 Patent, MPV holds all substantial rights in and under the '668 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

108.      The United States Patent Office issued the '668 Patent on May 1, 2007, and it is titled "Digital Image Processing System and Method for Emphasizing a Main Subject of an Image."

109.      The '668 Patent is valid, enforceable and was duly issued in full compliance with Title 35 of the United States Code after a full and fair examination.

110.      Kyocera has practiced without authorization or license one or more claims of the '668 Patent including claim 1.

111.      Kyocera practiced the asserted claims of the '668 Patent by making, using, offering for sale, selling, and/or importing the Accused Kyocera Smartphones, including Kyocera DuraForce Ultra 5G.

112.      Claim 1 of the '668 Patent recites an embodiment of the claimed subject matter:

1.  A computer method for modifying an image having a main subject and a background pixels, comprising the steps of:

   a)  automatically identifying the main subject of the image, and

   b)  automatically altering pixel values of said image to emphasize said main subject, said altering following said identifying;

   c)  said altering follows any and all identifying of said main subject and wherein said identifying further comprises: segmenting said image into a plurality of regions; and generating a plurality of belief values, each said belief value being associated with one of a plurality of regions of the image, said belief values each being related to the probability that the associated region is a main subject of the image, to provide a main subject belief map.

113.    Kyocera sells phones (e.g., DuraForce Ultra 5G) that have a portrait mode function which performs a method for modifying an image having a main subject and background pixels.







Screenshot from Kyocera DuraForce Ultra 5

114.     When a user takes a picture using portrait mode, Kyocera's camera automatically identifies a face (i.e., main subject) in an image and automatically alters pixel values to blur the area outside the face (i.e., emphasize said main subject).

  

Pictures taken using Kyocera's portrait mode.

Screenshot from Kyocera DuraForce Ultra 5G

115.     Before altering the pixel values, the image is segmented into regions belonging to the face and the background (i.e., "plurality of regions") and generates a plurality of belief values associated with those regions. Those belief values are each related to the probability that the associated region is the face to provide a main subject belief map to assist in emphasizing the face.

 

Pictures taken using Kyocera's portrait mode.

116.    Kyocera sells phones (e.g., DuraForce Ultra 5G) that have a portrait mode function which performs a method for modifying an image having a main subject and background pixels.

117.    Kyocera's Accused Printers include software that when executed perform a method that infringes practices each and every limitation of claim 1 of the '668 Patent.

118.    Kyocera's Accused Printers practice include software that when executed a method of modifying an image having a main subject and a background to darken or lighten the background of a scanned document.

| Adjust the image quality precisely | | | | |
|---|---|---|---|---|
| Emphasize or blur the image outline. **Example:** Emphasize the image outlines | | | Sharpness | page 6-39 |
| Adjust the difference between dark and light parts of the image. | | | Contrast | page 6-41 |
| Darken or lighten the background (the area with no texts or images) of a document. **Example:** Lightening the background | | | Background Density | page 6-39 |
| Prevent bleed-through in 2-sided originals. | | | Prevent Bleed-through | page 6-40 |

119.    Kyocera MFPs identify the main subject of a captured image, including text and graphics, in a scanned document.

| Item | Description |
|---|---|
| **OCR Text Recognition**[2] | Set the default OCR Text Recognition. **Value:** Off, On |
| **Primary OCR Language**[2] | Set the default language of the text to be extracted. ([**English**] is selected as a default.) Select the language to extract from the options displayed on the touch panel. |
| **OCR Output Format**[2] | Set the default OCR output format. **Value:** Text + Graphics, Text + Graphics with Scanned Image, Scanned Image with Searchable Text |

| Darken or lighten the background (the area with no texts or images) of a document. **Example:** Lightening the background | | | Background Density | page 6-39 |
|---|---|---|---|---|

120.    The Kyocera printers include software that when executed alters background pixel values to remove a dark background, emphasizing the main subject of the scanned document.



121.    The Accused Kyocera Printers include software than when executed segment the scanned image into background regions and regions containing text or images, and generates a belief value for each of the regions indicating whether the region contains text, graphics, or background. The regions define a belief map which is then used to darken or lighten background regions.

| Item | Description |
|---|---|
| OCR Text Recognition[2] | Set the default OCR Text Recognition. **Value: Off, On** |
| Primary OCR Language[2] | Set the default language of the text to be extracted. (**[English]** is selected as a default.) Select the language to extract from the options displayed on the touch panel. |
| OCR Output Format[2] | Set the default OCR output format. **Value: Text + Graphics, Text + Graphics with Scanned Image, Scanned Image with Searchable Text** |

| | | | | |
|---|---|---|---|---|
| Darken or lighten the background (the area with no texts or images) of a document. **Example: Lightening the background** | | | Background Density | page 6-39 |

122.    Kyocera's activities were without authority of license under the '090

Patent.

123.    Kyocera's users, customers, agents and/or other third parties (collectively, "third-party infringers") infringed and continue to infringe, including under 35 U.S.C. § 271(a), at least claim 1 of the '668 Patent by using the accused Kyocera products.

124.    Kyocera has, since at least no later than May 27, 2021, known or been willfully blind to the fact that third-party infringers' use of the accused Kyocera products directly infringed the '668 Patent.

125.    Kyocera's knowledge of the '668 Patent, which covered operating the accused Kyocera products in their intended manner such that all limitations of at least claim 1 of the '668 Patent were met, made it known to Kyocera that the third-party infringers' acts directly infringed the '668 Patent, or, at the very least, rendered Kyocera willfully blind to such infringement.

126.    Having known or been willfully blind to the fact that the third-party infringers' use of the Accused Infringing Devices in their intended manner such that all limitations of at least claim 1 of the '668 Patent were met directly infringed the '668 Patent, Kyocera actively encouraged the third-party infringers to directly infringe the '668 Patent by making, using, testing, selling, offering for sale, importing and/or licensing the accused Kyocera products, and by, for example: marketing them to the third-party infringers; supporting and managing the third-

party infringers' use; and providing technical assistance to the third-party

infringers during their continued use of the accused Kyocera products by, for

example, publishing instructional information directing third-party infringers how

to make and use the infringing products to infringe claim 1 of the '668 Patent.

127.    Kyocera induced the third-party infringers to infringe at least claim 1

of the '668 Patent by directing or encouraging them to operate the infringing

products that satisfy all limitations of the asserted claims of the '668 Patent.

128.    For example, Kyocera advertised and promoted the features of the

infringing products and encouraged the third-party infringers to operate them in an

infringing manner. Kyocera further provided technical assistance as to how the

infringing products should be used by the third-party infringers by, for example,

publishing instructional information directing third-party infringers how to make

and use the accused Kyocera products to infringe claim 1 of the '668 Patent:

129.    In response, the third-party infringers acquired and operated the

accused Kyocera products such that all limitations of the asserted claims of '668

Patent were practiced.

130.    Kyocera specifically intended to induce, and did induce, the third-

party infringers to infringe at least claim 1 of the '688 Patent, and Kyocera knew of

or was willfully blind to such infringement. Kyocera advised, encouraged, and/or

aided the third-party infringers to engage in direct infringement, including through

its encouragement, advice, and assistance to the third-party infringers to use the infringing Kyocera products.

131.     Based upon, among other things, the foregoing facts, Kyocera induced infringement under 35 U.S.C. § 271(b) of at least claim 1 of the '668 Patent.

132.     Upon information and belief, Kyocera knew that the accused Kyocera products are made and operate in a manner that satisfies all limitations of at least claim 1 of the '668 Patent.

133.     Kyocera's acts of infringement of the '668 Patent were willful and intentional under the standard of *Halo Elecs., Inc. v. Pulse Elecs., Inc*., 136 S. Ct. 1923 (2016).  Since at least May 27, 2021, Kyocera willfully infringed the '668 Patent by refusing to take a license.  Instead of taking a license to the '668 Patent, Kyocera made the business decision to "efficiently infringe" the '668 Patent. In doing so, Kyocera willfully infringed the '668 Patent.

134.     Kyocera's acts of direct and indirect infringement caused damage to MPV and MPV is entitled to recover from Defendant the damages sustained by Plaintiff as a result of Defendant's infringing acts in an amount subject to proof at trial, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

## NOTICE

135.    MPV does not currently distribute, sell, offer for sale, or make products embodying the Asserted Patents.

136.    Kyocera has had notice of infringement of the (1) the '890 Patent since at least as early as November 6, 2020, (2) the '039 Patent since at least as early as the filing date of this Complaint, (3) the '573 Patent since at least as early as May 27 2021, (4) the '858 Patent since at least as early as May 6, 2021, and (5) the '668 Patent since at least as early as May 27, 2021.  Defendant Kyocera also has had prior knowledge and notice of MPV's patents by virtue of a patent license that includes them.  Kyocera's license expired in 2019.

## NOTICE OF REQUIREMENT OF LITIGATION HOLD

137.    Kyocera is hereby notified it is legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited or "raw" source material, and other information and tangible things that Kyocera knows, or reasonably should know, may be relevant to actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereafter collectively referred to as "Potential Evidence").

138.     As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, laptop computers, mobile phones, personal data assistant devices, Blackberry devices, iPhones, video cameras and still cameras, and any and all other locations where electronic data is stored.  These sources may also include any personal electronic, digital, and storage devices of any and all of Kyocera's agents, resellers, or employees if Kyocera electronically stored information resides there.

139.     Kyocera is hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury

that the Potential Evidence is not favorable to Kyocera's claims and/or defenses.

To avoid such a result, Kyocera's preservation duties include, but are not limited

to, the requirement that Kyocera immediately notify its agents and employees to

halt and/or supervise the functions of Kyocera's electronic systems and refrain

from deleting Potential Evidence, either manually or through a policy of periodic

deletion.

### JURY DEMAND

MPV hereby demands a trial by jury on all claims, issues and damages so triable.

### PRAYER FOR RELIEF

MPV prays for the following relief:

    a. That Kyocera be summoned to appear and answer;

    b. That the Court enter an order declaring that Kyocera has infringed each of the Asserted Patents.

    c. That the Court grant MPV judgment against Kyocera for all actual, consequential, special, punitive, increased, and/or statutory damages, including, if necessary, an accounting of all damages; pre and post-judgment interest as allowed by law; and reasonable attorney's fees, costs, and expenses incurred in this action;

    d. That Kyocera be found to have willfully infringed the Asserted Patents; and

    e. That MPV be granted such other and further relief as the Court

may deem just and proper under the circumstances.

Dated:  March 27, 2023                    Respectfully submitted,


                                          CONNOR LEE & SHUMAKER PLLC

                                          By:  _____
                                               Cabrach J. Connor
                                               cab@CLandS.com;
                                               Texas Bar No. 24036390
                                               John M. Shumaker
                                               john@CLandS.com
                                               Texas Bar No. 24033069
                                               Jennifer Tatum Lee
                                               jennifer@CLandS.com
                                               Texas Bar No. 24046950

                                               609 Castle Ridge Road, Suite 450
                                               Austin, Texas 78746
                                               512.646.2060 Telephone
                                               888.387.1134 Facsimile